713 So.2d 674 (1998)
Jimmy ROLLINS, Plaintiff-Appellant,
v.
GLITSCH FIELD SERVICES, INC. & Liberty Mutual Insurance Co., Defendants-Appellees.
No. 97-1404.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1998.
*675 Roy Seale Halcomb, Jr., Alexandria, for Jimmy Rollins.
Madeline Lee, Alexandria, for Glitsch Field Services, Inc., et al.
Before YELVERTON, SAUNDERS and PICKETT, JJ.
YELVERTON, Judge.
Jimmy Rollins filed a workers' compensation claim against his employer, Glitsch Field Services, Inc., and its workers' compensation insurer, Liberty Mutual Insurance Company. Rollins claimed he was entitled to rehabilitation and that his benefits had been improperly reduced. Rollins further claimed that Liberty's actions in handling his claim were arbitrary and capricious, entitling him to penalties and attorney's fees.

FACTS
The parties stipulated to the following facts. On March 29, 1995, Rollins injured his back at work while reaching out and picking up a piece of angle iron. At the time Rollins was employed by Glitsch and was working in California. However, he had been hired by Glitsch in Louisiana.
Liberty Mutual paid benefits under the workers' compensation law of California at the rate of $406 per week. By letter dated May 10, 1996, Rollins made demand on Glitsch and Liberty Mutual to provide him with rehabilitation. Rollins, living in Louisiana, was advised by Glitsch and Liberty Mutual that he was not entitled to rehabilitation under California law.
Thereafter, Rollins requested that his benefits be paid under Louisiana law so that he could receive rehabilitation. Responding to that request, the payment of benefits under California law was terminated effective May 21, 1996. Liberty did not initiate payment of weekly benefits to Rollins under Louisiana law until June 25, 1996, at which time two checks were mailed to Rollins totaling $615 which paid him for the time period May 22, 1996 through June 25, 1996, at the rate of $123 a week. Rollins continued to receive benefits at the rate of $123 a week through December 10, 1996. Payments were temporarily suspended from December 11, 1996 through January 13, 1997. Since that time payment of benefits at the maximum rate of $323 a week have been paid.
Rollins was first contacted by a rehabilitation consultant on February 3, 1997. Rollins' treating physician, Dr. John Patton, a neurosurgeon, is considering a second back operation. The rehabilitation consultant is waiting on Dr. Patton to decide on surgery after Rollins is seen in consultation by a second neurosurgeon.
Rollins filed the present claim alleging that Glitsch and Liberty Mutual were unreasonable in the implementation of rehabilitation, in taking a credit on the Louisiana Workers' Compensation benefits for benefits paid under the California law, and in terminating his benefits for over one month on two occasions. The workers' compensation judge found that Glitsch and Liberty Mutual had not acted unreasonably in the handling of any of these matters.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551. We will review Rollins' assignments of error accordingly.

REHABILITATION
Rollins claims that the trial court erred in finding that the nine-month delay in providing him with rehabilitation was reasonable. Rollins claims that the defendants were incorrect in stating that he was not entitled to rehabilitation under California law which is evidence of their bad faith in the handling of his claim. Rollins claims that Glitsch and Liberty Mutual did not provide him with "prompt rehabilitation services" pursuant to La.R.S. 23:1226 once he made a demand under Louisiana Law.
*676 The workers' compensation judge found that it was unreasonable to require an employer to initiate vocational rehabilitation in a situation of possible surgical intervention. The workers' compensation judge went on to state that, "[h]ad the claimant requested vocational rehabilitation from this trier of fact on May 10, 1996 it would have been denied pending a stabilization in the claimant's medical condition."
We first note that Ca.Labor Code § 4644(g) provides:
An employer shall not be liable to provide vocational rehabilitation services at a location outside the state, unless upon agreement of the employer and the employee, or a determination by the Division of Workers' Compensation that those services are more cost-effective than similar services provided in the state.
Rollins never submitted his claim to the Division of Workers' Compensation in California to determine if services in Louisiana were more cost-effective than similar services provided in California. Therefore, he was initially not entitled to vocational rehabilitation. There is nothing in the record to indicate that the defendants told Rollins he could submit the claim to the Division of Workers' Compensation. However, Rollins hired counsel and chose to receive benefits pursuant to Louisiana law so he could receive rehabilitation pursuant to Louisiana law. No attempt was made to investigate rehabilitation under California law.
However, the parties stipulated that, "[a]t all times pertinent, Mr. Rollins has been and continues to be entitled to rehabilitation and payment of temporary total disability benefits under the Louisiana Workman's Compensation Act." Rehabilitation was obviously very important to Rollins since he chose to receive benefits under Louisiana law, where he was entitled to a maximum rate of only $323 a week, so he could get rehabilitation. Under California law Rollins was entitled to benefits at the maximum rate of $406 a week.
Once Rollins sought rehabilitation in Louisiana, he was entitled to "prompt rehabilitation services." La.R.S. 23:1226(A). Rollins was not contacted by a vocational rehabilitation consultant until February 3, 1997, nine months after he initially requested rehabilitation. We agree that at the time of the hearing, the rehabilitation consultant was waiting to see if Dr. Patton was going to perform a second back surgery. However, the vocational rehabilitation counselor was already doing some work towards rehabilitation for Rollins including administering the Career Occupational Preference System Interest Inventory to assist in determining Rollins' interests. This could have been started nine months earlier. Also, prior to the vocational rehabilitation consultant meeting with Rollins, Glitsch and Liberty Mutual had no idea that Dr. Patton was contemplating a second back surgery.
Under these circumstances we find that the workers' compensation judge's finding that Glitsch and Liberty Mutual were reasonable in providing rehabilitation was clearly wrong. Glitsch and Liberty Mutual had no reason for the delay in implementing rehabilitation before the vocational consultant met with Rollins and was informed of the possible second surgery.
However, at the time of trial rehabilitation services were being provided to Rollins pending a determination of the need for the second surgery. The Workers' Compensation Law does not provide penalties and attorney's fees for arbitrary and capricious delay in implementing rehabilitation as requested by Rollins. Rollins cites Miller v. Byles Welding & Tractor Co., 96-164 (La. App. 3 Cir. 6/5/96); 676 So.2d 665, for the proposition that this court awarded penalties and attorney's fees for the employer's failure to provide rehabilitation services. Rollins misreads Miller which awarded penalties and attorney's fees because temporary total disability benefits were terminated. The employee had not been released to return to work by the doctor until he received rehabilitation. This court found that the employee was entitled to receive temporary total disability benefits until he received proper rehabilitation. The basis for the penalties and attorney's fees was the employer's termination of the employee's benefits and not the refusal to provide rehabilitation.
*677 The Louisiana Workers' Compensation Law does not provide a remedy for the delay in implementation of rehabilitation other than a determination by a court that an employee is entitled to rehabilitation. La. R.S. 23:1226 does not provide for penalties or attorney's fees. Penalties and attorney's fees are provided for in La.R.S. 23:1201 and 23:1201.2 when compensation or medical benefits payable are not timely paid. They do not apply to claims for delayed rehabilitation.

REDUCTION OF BENEFITS
All parties agree that La.R.S. 23:1035.1 is applicable to this claim because Rollins was hired in Louisiana and injured in California where he went to work.
La.R.S. 23:1035.1(2)(b) provides:
The total amount of all income benefits paid or awarded the employee under such other worker's compensation law shall be credited against the total amount of income benefits which would have been due the employee under this act, had the claim been made solely under this act;
Rollins alleges that the trial court erred in determining that Liberty Mutual was entitled to take a credit for the $4,565 difference between benefits payable under California law and benefits payable under Louisiana law. There is no dispute between the parties that Rollins would have received $4,565 less if he had been paid workers' compensation benefits pursuant to Louisiana law from the date of injury. Defendants reduced Rollins' weekly benefits payable under Louisiana law by $200 a week as a credit on the excess benefits they claim was owed by Rollins. The law is clear that Liberty Mutual is entitled to a credit for the total amount of all income benefits it paid under California law which were greater than the benefits it would have paid under Louisiana law had Rollins' claim been made solely under the Louisiana Workers' Compensation Act.
Rollins claims that when benefits were paid to him pursuant to California law, they were due and payable. He argues that the general rule dealing with credits found in La.R.S. 23:1206 gives the employer credit only for voluntary payments which were not due and payable when they were made. However, when two statutes are in conflict, the statute that is more specifically directed to the matter at issue must prevail as an exception to the statute that is more general. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); Andre v. Construction Material Shop, 93-1212 (La.App. 1 Cir. 3/11/94); 633 So.2d 1313.
In this case La.R.S. 23:1035.1(2)(b) specifically allows a credit for workers' compensation benefits paid under the laws of another state if the claim had been made solely in Louisiana. It provides an exception to the general rule dealing with credits found in La.R.S. 23:1206. Therefore, the trial court was correct in applying La.R.S. 23:1035.1(2)(b) to the instant case and finding that the defendants could take a credit for the difference in benefits payable under California law and Louisiana law. See Lentz v. North American Van Lines, Inc., 582 So.2d 984 (La.App. 1 Cir.1991) and Pierce v. Louisiana Maintenance Service, Inc., 95-747 (La. App. 5 Cir.); 668 So.2d 1232, writ denied, 96-535 (La.4/19/96); 671 So.2d 928, in which both courts applied La.R.S. 23:1035.1(2)(b) and allowed the employer credit for any benefits paid pursuant to the other state's law that the employee would not have received had the claim been made solely under Louisiana law.

DISCONTINUANCE OF BENEFITS
Rollins asserts that Glitsch and Liberty Mutual acted arbitrarily in terminating his benefits for over one month on two separate occasions and by continuing to withhold $200 per week from Rollins' weekly benefits for one month longer than was necessary. The workers' compensation judge found that all three instances involved administrative or clerical error which were rectified in a timely manner and that defendants were not arbitrary and capricious.
The first time benefits were suspended was when benefits under California law were discontinued effective May 21, 1996. Benefits were not reinstated under Louisiana law until June 25, 1996, at which time two checks were mailed to Rollins totaling $615 which paid him for the time period May 22, 1996 *678 through June 25, 1996, at the rate of $123. The second time benefits were suspended occurred from December 11, 1996 through January 13, 1997, at which time payments were resumed and brought up to date. Also, the $200 per week deduction should have terminated by October 30, 1996, but continued until December 10, 1996. By check dated December 23, 1996, defendants reimbursed Rollins the amounts erroneously withheld during this time period.
We note that La.R.S. 23:1201 and La.R.S. 23:1201.2 were amended in 1995, effective June 29, 1995. However, these amendments are to be applied prospectively only. Elswick v. Highway Transport, 96-14 (La.App. 1 Cir. 9/27/96); 680 So.2d 1364. Therefore, we will apply the law as it existed at the time of Rollins' accident and before these amendments.
Whether an employer should be cast with penalties and attorney's fees for failure to make timely payment of benefits is essentially a question of fact for which the trial court's findings should not be disturbed on appeal absent manifest error. An employer who has reasonable grounds to controvert the plaintiff's claim to workers' compensation benefits does not owe penalties and attorney's fees.
Bordelon v. Management Co., Inc., 94-472, p. 4 (La.App. 3 Cir. 1/11/95); 649 So.2d 1070, 1072, writ denied, 95-0346 (La.4/7/95); 652 So.2d 1346. (Citations omitted).
We agree with the workers' compensation judge that defendant's failure to pay was probably due to a clerical error. However, "as a matter of law an employer cannot urge in its defense its own poor clerical work or administrative lapses ... to escape penalties for non-payment." Id. at 1073. Therefore, we find that the trial court erred and should have awarded penalties and attorney's fees for non-payment, especially since defendants agree that these benefits were owed at the time. Liberty Mutual clearly was without probable cause when it failed to pay Rollins.
La.R.S. 23:1201(F) provides that the penalty shall be an amount equal to 12% of any unpaid compensation or medical benefits or $50 a day, whichever is greater, for each day in which any and all compensation remains unpaid. The total $50 a day penalty shall not exceed $2,000 in the aggregate.
Compensation was not paid from May 22, 1996 through June 25, 1996. Two checks were mailed on June 25, 1996. Compensation remained unpaid for 34 days for a total $50 a day penalty of $1,700. Compensation was also not paid from December 11, 1996 through January 13, 1997. A check was mailed on January 13, 1997. Compensation remained unpaid for 33 days for a total $50 a day penalty of $1650. The amount of $200 was incorrectly withheld from October 30, 1996 through December 10, 1996. A check was not issued until December 23, 1996. Compensation was incorrectly withheld for 55 days for a total $50 a day penalty of $2,750.
This court has held that an employee is entitled to one maximum penalty of $2,000 for failure to timely pay any and all compensation benefits. McLaughlin v. Hill City Oil Company, 97-577 (La.App. 3 Cir. 10/8/97); 702 So.2d 786. Therefore, Rollins is entitled to one $2,000 penalty.
We additionally find that Rollins is entitled to an award of attorney's fees for the efforts his attorney made to ensure that Rollins' benefits were reinstated properly, including the efforts in this appeal. Not only did Rollins' attorney spend time in the trial and appellate court in this matter, but he also wrote numerous letters requesting that Liberty Mutual reinstate these benefits and for back-due benefits. We find $5,000 as attorney's fees a reasonable award for the time spent at the trial and appellate level.
We assess both the $2,000 penalty and $5,000 in attorney's fees against Liberty Mutual since it was the responsibility of Liberty Mutual to insure timely and correct payment of Rollins' benefits. We also award legal interest on all back-due weekly benefits awarded from the day each payment became due until paid. See McLaughlin, 702 So.2d 786. We award legal interest on the award of penalties and attorney's fees from the date of judgment. Id.
For the above reasons, we reverse the judgment insofar as it fails to award penalties *679 and attorney's fees. We order Liberty Mutual to pay $2,000 in penalties and $5,000 in attorney's fees together with legal interest from the date of judgment. We also award legal interest on all back-due compensation benefits from the due date of each installment until paid. We affirm the judgment in all other respects.
Costs of this appeal are assessed to Liberty Mutual Insurance Co.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
SAUNDERS, J., dissents in part and concurs in part and assigns written reasons.
SAUNDERS, Judge, dissenting in part and concurring in part.
I agree with the majority in its finding that the workers' compensation judge erred and should have awarded penalties and attorney's fees for the non-payment of Rollins' wage benefits. I concur in the assessment of a $2,000.00 penalty pursuant to La.R.S. 23:1201(F) and $5,000.00 in attorneys fees against Liberty Mutual due to their failure to insure timely and correct payment of Rollins' wage benefits.
However, I cannot agree with the majority's findings on the issue of rehabilitation. Although the majority finds that Glitsch and Liberty Mutual were unreasonable in failing to initiate rehabilitation for nine months beyond Rollins' request, the majority holds that the workers' compensation law does not provide penalties and attorney fees for arbitrary and capricious delay in implementing rehabilitation as requested by Rollins. I cannot agree with this. Although the majority is certainly correct in pointing out that La.R.S. 23:1226 does not provide for penalties or attorneys fees, I am of the opinion that rehabilitation is, indeed, a species of medical benefits due under La.R.S. 23:1201, and as such, penalties and attorneys fees are appropriate for the failure to provide rehabilitation.
In all other respects, I concur with the holdings of the majority.